

GABRIEL P. HARVIS
BAREE N. FETT

August 23, 2016

BY ECF
Honorable Peggy Kuo
United States Magistrate Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re:   *Haylett, et al. v. City of New York, et al.*, 15 CV 223 (WFK) (PK)

Your Honor:

I represent plaintiffs in the above-referenced civil rights action. I write pursuant to the Court's order dated August 18, 2016 to respectfully outline the factual and legal bases for plaintiffs' motion for default judgment against defendant Bruce Sutton.

*Plaintiffs' Factual Allegations and the Correction Department's Investigation*

On the afternoon of June 26, 2014, plaintiffs were traveling in an automobile on the roadways of Brooklyn. Complaint, ¶ 14. Kenneth Eastmond, who was driving, steered plaintiffs' vehicle around a Mercedes being operated by defendant Bruce Sutton, an off-duty correction officer armed with a handgun. *Id.* at ¶¶ 15-16. For reasons unknown to the plaintiffs, defendant Sutton engaged in a pursuit of plaintiffs' vehicle while brandishing his gun, cursing and gesturing obscenely toward plaintiffs. *Id.* at ¶¶ 16-19. Sutton appeared to be suffering from "road rage."

Plaintiffs' vehicle ultimately stopped in the vicinity of Linden Boulevard and Essex Street and Sutton approached plaintiffs' car with his gun drawn and his badge visible at his waist. *Id.* at ¶¶ 19-21. Pointing his gun at plaintiffs, Sutton demanded Mr. Eastmond's driver's license and registration. *Id.* at ¶¶ 22-23. Plaintiffs were extremely frightened, and Mr. Eastmond handed over his paperwork. *Id.* at ¶¶ 23-24. The ordeal went on for over an hour, during which plaintiffs called 911, were detained against their

will and plaintiffs' vehicle was searched by NYPD officers. *Id.* at 25-28. In the end, neither defendant Sutton nor plaintiffs were arrested. *Id.*

An official investigation of the incident was conducted by defendant Sutton's employer, the New York City Department of Correction. *See* New York City Department of Correction Trials and Litigation Division Memorandum dated February 20, 2015, annexed hereto as Exhibit 1. Citing video surveillance, interviews with multiple witnesses and other available evidence, investigators substantiated plaintiffs' allegations, concluding that "there is sufficient evidence to prove beyond a preponderance" that defendant Sutton violated various departmental guidelines as well as New York Penal Law §§ 120.14(1) (Menacing in the Second Degree), 240.26(1) (Harassment in the Second Degree), 240.53(3) (Falsely Reporting an Incident in the Third Degree), 265.01(2) (Criminal Possession of a Weapon in the Fourth Degree) and 265.03(b) (Criminal Possession of a Weapon in the Second Degree). Exhibit 1 at pp. 8-9.

*Procedural History*

The case was commenced on January 15, 2015. *See* DE #1. The matter was stayed pending the Department of Correction's investigation from April 29, 2015 through November 5, 2015 and again from December 10, 2015 through February 8, 2016. *See* Docket, *generally.* Defendant Sutton was served with a Summons and Complaint at his employment address on November 4, 2015 and, because the first service technically occurred during a stay, Sutton was served again on April 11, 2016. *See* DE #12 and DE #20. Sutton never answered or otherwise responded to the Complaint. Plaintiffs requested a Certificate of Default on May 9, 2016, with a copy served upon defendant Sutton by mail, and the Clerk of the Court noted the default the same day. *See* DE #23 and DE #24. Plaintiffs moved for default judgment on May 9, 2016; again, a copy of the moving papers were served upon Sutton by mail. *See* DE #25.

The Court convened a default hearing on May 20, 2016, defendant Sutton failed to appear, and the Court directed plaintiff to submit a proposed default order. *See* Minute Entry dated May 20, 2016. Plaintiff filed the proposed order on May 24, 2016. *See* DE #28. The issue of default was referred to Your Honor by order dated August 8, 2016. As of this writing, defendant Sutton has not appeared or taken any steps to defend the action.

*Legal Standard for Default Judgment*

"Rule 55 of the Federal Rules of Civil Procedure outlines the two-step process for obtaining default judgment." *Advanced Capital Commercial Group, Inc. v. Suarez*, 09 CV 5558 (DRH) (GRB), 2013 WL 5329254, *3 (E.D.N.Y. Sept. 20, 2013) (citing Fed. R. Civ. P. 55); *Enron Oil Corp. v. Daikuhara*, 10 F.3d 90, 95–6 (2d Cir. 1993). "[F]irst, the entry of a default, and second, the entry of a default judgment." *Coley v. Vannguard Urban Improvement Ass'n, Inc.*, 12 CV 5565 (PKC) (RER), 2016 WL 4179942, *2 (E.D.N.Y. Aug. 5, 2016) (citing *New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005)).

"The first step, entry of a default, formalizes a judicial recognition that a defendant has, through its failure to defend the action, admitted liability to the plaintiff." *Id.* (quoting *City of N.Y. v. Mickalis Pawn Shop, LLC (Mickalis)*, 645 F.3d 114, 128 (2d Cir. 2011)) (quotation marks omitted); *see Advanced Capital*, 2013 WL 5329254 at *3 (citing *Grace v. Bank Leumi Trust Co. of NY*, 443 F.3d 180 (2d Cir. 2006)) ("A defendant may be in default whether by failing to plead, appear, answer a complaint, or otherwise defend."); *see also Green*, 420 F.3d at 106 (lack of intent to defend is also grounds for finding default). Second, following the entry of default, a district court may enter default judgment against a properly served defendant who failed to defend or otherwise appear in the action. This is because once a default is entered against a defendant, that party is deemed to have admitted the well-pleaded allegations of fact in the complaint. *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992).

As stated above, plaintiffs have satisfied all procedural requirements for entry of a default judgment. Specifically, defendant Sutton did not answer the Complaint in this action, and the Clerk of the Court recognized Sutton's default. Further, the Complaint contains sufficient factual matter to warrant entry of a default judgment.

*Legal Basis for Plaintiffs' Claims*

Plaintiffs bring seven claims against defendant Sutton, each of which is amply supported by well-pled allegations in the Complaint and corroborated by discovery adduced to this point.

The first three claims involve Sutton's seizure of the plaintiffs in the absence of reasonable suspicion or probable cause, violations of both federal and state law. *See* Complaint, ¶¶ 33-45; *Curry v. City of Syracuse*, 316 F.3d 324, 335 (2d Cir. 2003)

(holding that the warrantless seizure of an individual is presumptively unlawful). The allegations in the Complaint, along with the City's investigative findings, prove that defendant Sutton lacked probable cause or reasonable suspicion. *See, e.g.*, Exhibit 1, p. 7 ("This investigation determined that the circumstances surrounding Investigator Sutton's conduct on June 26, 2014 did not justify the use of a firearm to menace Mr. East[mond] and Ms. Haylett.").

Such rationale also applies to plaintiffs' fourth claim for assault under state law. Complaint, ¶¶ 46-49; *see Oliver v. Cuttler*, 968 F. Supp. 83, 92 (E.D.N.Y. 1997) ("Under New York law, to establish a claim for assault a party must show an intentional placing of another in fear of imminent and offensive contact.") (citing *United Nat'l Ins. Co. v. Waterfront N.Y. Realty Corp.*, 994 F.2d 105, 108 (2d Cir. 1993) and *Rivera v. Puerto Rican Home Attendants Servs., Inc.,* 930 F.Supp. 124, 132 (S.D.N.Y. 1996)). By any measure, the outrageous conduct alleged in the Complaint and substantiated by investigators would qualify as an assault under the law.

Plaintiffs' fifth and sixth claims against Sutton, for the infliction of emotion distress, are also supported on this record. *See Bender v. City of New York*, 78 F.3d 787, 790 (2d Cir. 1996) ("The state law tort of intentional infliction of emotional distress has four elements: (1) extreme and outrageous conduct, (2) intent to cause severe emotional distress, (3) a causal connection between the conduct and the injury, and (4) severe emotional distress."). As a matter of law, being chased and menaced by an armed motorist and then seized at gunpoint, as recounted by the plaintiffs and substantiated by investigators, satisfies the elements of these claims.

The final claim against Sutton for deliberate indifference can also be sustained. "Deliberate indifference" is "a mental state more blameworthy than negligence"—it is "a state of mind that is the equivalent of criminal recklessness." *Kelsey v. City of New York*, 306 F. App'x 700, 702 (2d Cir. 2009) (quoting *Hernandez v. Keane,* 341 F.3d 137, 144 (2d Cir. 2003)) (quotations omitted). Here, investigators found that a preponderance of the evidence showed that Sutton engaged in criminal conduct in his actions toward plaintiffs. Thus, plaintiffs have made the necessary showing to support their deliberate indifference claim.

Accordingly, plaintiffs respectfully request that the Court enter default judgment in their favor against defendant Bruce Sutton.

Hon. Peggy Kuo
Aug. 23, 2016

    Thank you for your consideration of this request.

                                                       Respectfully submitted,

                                                       Gabriel P. Harvis

Encl.

cc:     Elissa B. Jacobs, Esq.

       Mr. Bruce Sutton (by mail)
       New York City Department of Correction
       DOC Investigative Division
       75-20 Astoria Boulevard
       East Elmhurst, New York 11370