

## MEMORANDUM
## TRIALS AND LITIGATION DIVISION
## THIS IS A CONFIDENTIAL DOCUMENT

**TO:**  Deanna G. Logan, Assistant Commissioner, Trials and Litigation Division, New York City Department of Correction

Jennifer Sculco, Inspector General, New York City Department of Investigation

**FROM:**  Chimere Spaulding, Investigator, New York City Department of Correction

Jose L. Nieves, Agency Attorney, New York City Department of Correction

**DATE:**  February 20, 2015

**SUBJECT:**  Report of Investigation Regarding Display/Use of Firearm

---

### BACKGROUND INFORMATION:

A. Subject:
   I. Bruce Sutton, Associate Investigator, Shield # 616, (hereinafter Investigator Sutton) Date of Appointment February 20, 2006, Firearms owned: 9 MM Glock 26 purchased 11/20/2013 (personal protection firearm), Date of last qualification on personal protection firearm 4/23/2014.

B. Witnesses:
   I. Kenneth Eastman (hereinafter Mr. Eastman): civilian victim, driver of 2014 White Honda Accord involved in the subject incident.

   II. Yolma Haylett (hereinafter Ms. Haylett): civilian victim, front passenger of 2014 White Honda Accord involved in the subject incident.

   III. Matthew Patel (hereinafter Mr. Patel): Hotel Bliss employee, provided surveillance video of the subject incident of Mr. Eastman's 2014 White Honda Accord involving Investigator Sutton.

   IV. Stephen Louis (hereinafter Mr. Louis): civilian eyewitness, observed Investigator Sutton display his firearm towards Mr. Eastman while in his 2014 White Honda Accord during the subject incident.

   V. Investigator Alexandria Maldonado, Shield # 604 (hereafter Investigator Maldonado): DOC Investigator that responded to the scene of the subject incident to conduct preliminary investigation.

DEF 12

    VI.    Investigator Weston Thompson, Shield # 2136 (hereinafter Investigator Thomson): DOC Investigator that responded to the scene of the subject incident to conduct preliminary investigation.

    VII.    Deputy Director of Investigations Ruben Benitez, Shield # 27 (hereinafter DDI Benitez): Investigation Division supervisor who received the initial report from Investigator Sutton regarding subject incident.

    VIII.    Sergeant Manuel Rossello, Shield # 4518 (hereinafter SGT Rosello): NYPD first responder to the subject incident.

## INITIAL REPORT SUMMARY:

On June 26, 2014, at approximately 1315 hours, while off duty, Investigator Sutton was operating his personal vehicle, a silver Mercedes Benz NY license plate EWN2954, east bound on Linden Boulevard, Brooklyn, NY. Investigator Sutton was returning home from attending his niece's graduation at Brooklyn College. While driving Investigator Sutton encountered a car accident on Linden Boulevard between Junius Street and Van Sinderen Avenue, Brooklyn, NY.

The police officers at the scene of the accident directed all traffic on Linden Boulevard to continue on the service road. As Investigator Sutton drove toward the service road a 2014 white Honda Accord pulled up very close to the right side of Investigator Sutton's vehicle. The driver of the 2014 white Honda Accord, later identified as Mr. Eastman, and Investigator Sutton began to exchange words from their vehicles. Investigator Sutton then proceeded to drive onto Linden Boulevard traveling east bound. Mr. Eastman also continued to travel east bound on Linden Boulevard. (*see exhibit 5, 6, 9, 12*)

Investigator Sutton and Mr. Eastman stopped their vehicles at the red traffic signal on the intersection of Williams Street and Linden Boulevard. At that time Mr. Eastman and Investigator Sutton exchanged words while stopped at the traffic light. Investigator Sutton and Mr. Eastman then continued on Linden Boulevard until they stopped at the red traffic signal at the intersection of Linden Boulevard and Pennsylvania Avenue. Mr. Eastman and Investigator Sutton again exchanged words as they were stopped at the red traffic signal. During the MEO 16 Interview Investigator Sutton claimed that he observed Mr. Eastman drop his right hand from the steering wheel and moved it in the direction toward his waist while Mr. Eastman leaned forward. Investigator Sutton believed that Mr. Eastman's actions were indicative of Mr. Eastman reaching for a weapon. (*see exhibit 5, 6, 9, 12*)

After the traffic signal at the intersection of Pennsylvania and Linden Boulevard changed, Mr. Eastman proceeded down Linden Boulevard and then merged right into the service road near Ashford Street. Investigator Sutton followed Mr. Eastman's vehicle onto the Linden Boulevard service road. Investigator Sutton claimed that Mr. Eastman pulled over and stopped in the service lane on Linden Boulevard near Ashford Street. Investigator Sutton claimed that he pulled his vehicle over in the same lane approximately three car lengths in front of Mr. Eastman's vehicle. (*see exhibit 5, 6, 9, 12*) Investigator Sutton then called 911 emergency service and reported to the 911 operator that he observed a man operating a white

Honda Accord recklessly and that he believed that the driver of the white Honda Accord had a weapon. The 911 Operator then advised Investigator Sutton that he must stop his vehicle and remain stationary so that the police can respond to his location. (*see exhibit 13*) Mr. Eastman then proceeded to drive the white Honda Accord down the Linden Boulevard service road and Investigator Sutton continued to follow Mr. Eastman's vehicle eventually losing sight of the vehicle. Subsequently, as Investigator Sutton turned down Essex Street he re-encountered Mr. Eastman's vehicle stopped adjacent to the Hotel Bliss guest parking lot on Essex Street near Linden Boulevard. Investigator Sutton stopped his vehicle several car lengths behind Mr. Eastman's white Honda Accord. (*see exhibit 5, 6, 9, 12, 13*)

Once both Investigator Sutton and Mr. Eastman's vehicles were stopped on Essex Street, Investigator Sutton displayed his personal protection firearm pointed at Mr. Eastman. Investigator Sutton then demanded that Mr. Eastman provide him a driver's license and registration. (*see exhibit 5, 6, 9, 12*) During this time Investigator Sutton called 911 emergency services and reported to the 911 operator that he had a white Honda Accord stopped at Essex Street and Linden Boulevard. (*see exhibit* 13) New York Police Department (NYPD) Sergeant Manuel Rossello, Shield # 4518, and several other officers responded to Essex Street and Linden Boulevard to further investigate the situation. The NYPD personnel on the scene did search Mr. Eastman's vehicle with his consent but did not recover any weapons. No arrests were made by the NYPD as a result of the 911 emergency service telephone call placed by Investigator Sutton. (*see exhibit 7*)

## INVESTIGATION SUMMARY

On July 2, 2014, the undersigned reviewed the preliminary investigation packet provided by the Investigation Division. The packet consisted of 20 pages that included a CD of the surveillance video footage from Hotel Bliss, approximately 9 photographs, a detailed Investigative Action report from Investigator Maldonado, shield #604, two typed Department Memoranda prepared by Investigator Sutton, a Firearm Receipt Report for Investigator Sutton's 9 MM Glock 26, an Event Information Sprint printout, and a letter dated July 1, 2014 from Supervising Investigator Falzon to the NYPD Tapes and Records Unit. This investigation was initiated to determine the facts and circumstances surrounding Investigator Sutton's display/use of his personal protection firearm on June 26, 2014 while off duty.

The investigation included an examination of the preliminary investigation packet provided by the Investigation Division, a field visit to Essex Street and Linden Boulevard, Brooklyn, NY, a review of Investigator Sutton's Employee Personal Information Form, Investigator Sutton's Firearm Carrying Permit and Special Patrolman Identification card, the NYPD Communication's Division audio recording of all relevant 911 emergency service calls and NYPD radio communications, an interview of Investigator Sutton pursuant to Mayoral Executive Order 16, Mr. Eastman's written statement, and interviews of Mr. Eastman, Ms. Haylett, Mr. Patel, Mr. Louis, Investigator Maldonado and DDI Benitez.

The investigation determined the following undisputed facts. On June 26, 2014, at approximately 1315 hours, Investigator Sutton was off duty and operating his personal vehicle, a silver Mercedes Benz, NY license plate EWN2954. While traveling east bound on Linden Boulevard Investigator Sutton encountered a car accident on Linden Boulevard between Junius Street and Van Sinderen Avenue, Brooklyn, NY. At that time Mr. Eastman was also

operating his vehicle, a white Honda Accord eastbound on Linden Boulevard with Ms. Haylett sitting in the front passenger side seat. At some point both Mr. Eastman and Investigator Sutton attempted to navigate their vehicles around the accident. Mr. Eastman and Investigator Sutton agree that their respective vehicles almost collided as they were driving on the Linden Boulevard service road. Mr. Eastman and Investigator Sutton exchanged words after the near collision occurred. Thereafter, Mr. Eastman and Investigator Sutton proceeded to travel east bound on Linden Boulevard. (*see exhibit 5, 6, 9, 12*)

Investigator Sutton and Mr. Eastman stopped their vehicle at several red traffic signals. While Mr. Eastman and Investigator Sutton were stopped at these red traffic signals they exchanged belligerent and disrespectful words. (*see exhibit 5, 6, 9, 12*) With regards to this incident, there is a significant departure between the factual account provided by Investigator Sutton and Mr. Eastman. The undersigned carefully considered the objective evidence of the recorded 911 emergency service calls, Hotel Bliss surveillance video and the witness account of Mr. Louis who had no prior connection with the parties of this incident. (*see exhibit 7*)

Investigator Sutton did call 911 emergency service after he exchanged words with Mr. Eastman at the intersection of Linden Boulevard and Pennsylvania Avenue. Investigator Sutton advised the 911 Operator that he is an off duty peace officer from Correction, that he observed a vehicle driving recklessly and that he believed the driver of that vehicle had a weapon. Investigator Sutton provided the 911 operator a detailed account of where Mr. Eastman's white Honda Accord was traveling for several blocks while remaining in view of him traveling in the same direction. (*see exhibit 13*)

Investigator Sutton called 911 emergency service a second time when he was stopped at Essex Street near the Hotel Bliss. (*see exhibit 13*) It is evident from the 911 audio recording that Investigator Sutton was yelling at Mr. Eastman while he is on his cellular telephone with the 911 operator. (*see exhibit 13*) During the MEO 16 interview Investigator Sutton initially claimed he called 911 emergency service immediately after he stopped his vehicle on Essex Street. (*see exhibit 12*) Investigator Sutton also claimed that Mr. Eastman ran toward Investigator Sutton's vehicle while reaching under his shirt toward his waist band. (*see exhibit 13*) Investigator Sutton stated that it was Mr. Eastman's actions that made him believe that Mr. Eastman had a gun and that is why he displayed his firearm. (*see exhibit 13*) Investigator Sutton believed that the encounter he had with Mr. Eastman on Essex Street was captured on the 911 audio recording. (*see exhibit 13*) However, the 911 audio recording was not consistent with Investigator Sutton's account. In addition, Hotel Bliss surveillance clearly showed that Investigator Sutton approached Mr. Eastman's vehicle and then returned to his vehicle to call 911. (*see exhibit 14*) Investigator Sutton's mannerisms and gestures appear to be consistent with Investigator Sutton directing Mr. Eastman to return to his vehicle as captured by the 911 audio recording. (*see exhibit 14*) Investigator Sutton himself agreed that after reviewing the surveillance video it was apparent to him that the second 911 emergency service call he made was after he approached Mr. Eastman's white Honda Accord. (*see exhibit 12*) The most revealing aspect about the 911 recorded call is that Investigator Sutton advised the 911 Operator that he was in possession of Mr. Eastman's driver's license. (*see exhibit 13*) This fact is significant because it established that Investigator Sutton had to have approached Mr. Eastman's vehicle and obtained the driver's license before he made the second call to 911 emergency service. This sequence of events is inconsistent with

Investigator Sutton's account of what transpired on Essex Street when he displayed his firearm.

The Hotel Bliss surveillance video also contradicted Investigator Sutton's version of events surrounding the display of his firearm on June 26, 2014. The surveillance video does not depict Mr. Eastman charging toward Investigator Sutton's vehicle immediately after he stopped the white Honda Accord; nor does the surveillance video show Investigator Sutton displaying his firearm towards Mr. Eastman any where near Investigator Sutton's vehicle. (*see exhibit 14*) Rather, the surveillance video showed Mr. Eastman's white Honda Accord pull over to the right side of the street. A few seconds later Investigator Sutton's vehicle is viewed pulling up behind the white Honda Accord a few car lengths away. Investigator Sutton stepped out of his vehicle, walked up to the driver side window of the white Honda Accord and then spoke to Mr. Eastman. Investigator Sutton then returned to his vehicle and appeared to be speaking on his cellular telephone. Mr. Eastman then stepped out of the white Honda Accord and approached Investigator Sutton's vehicle. The video showed the interaction that Investigator Sutton had with Mr. Eastman while he was on his cellular telephone with the 911 operator. (*see exhibit 14*)

Mr. Stephen Louis was an eyewitness of Investigator Sutton's display of his firearm toward Mr. Eastman on June 26, 2014. (*see exhibit 17*) Mr. Louis explained that he observed Mr. Eastman's white Honda Accord stop in front of the Hotel Bliss parking lot and then observed Investigator Sutton's gray Mercedes pull up behind the white Honda Accord. Mr. Louis further observed a man fitting Investigator Sutton's description jump out of the gray Mercedes with a gun in his hand. Mr. Louis explained that the man with the gun was yelling and walking very quickly toward the white Honda Accord. Mr. Louis stated that the man with the gun then stood in front of the white Honda Accord's driver door and pointed his gun at the driver of that vehicle while yelling at that driver. (*see exhibit 17*) Mr. Louis's account of Investigator Sutton's display of his firearm is consistent with the Hotel Bliss surveillance video.

Mr. Eastman and Ms. Haylett's description (statements taken separately) of Investigator Sutton's display of his firearm were largely identical. They explained that they stopped in front of the parking lot of the Hotel Bliss and Investigator Sutton's gray Mercedes pulled up behind them a few car lengths away. (*see exhibit 19*) They further stated that Investigator Sutton stepped out of his vehicle and ran up to the driver side door of their vehicle. At this time, they described Investigator Sutton as yelling profanities at them with a gun in his hand. Mr. Eastman and Ms. Haylett remained seated in the car and immediately followed Investigator Sutton's orders to provide him with a driver's license and vehicle registration. (*see exhibit 9*) Ms. Haylett stated that she was so frightened by Investigator Sutton's conduct and threats that she urinated on herself while seated in the vehicle. Both Mr. Eastman and Ms. Haylett did not understand who Investigator Sutton was and why he had them at gun point. When Investigator Sutton stepped away from their vehicle Ms. Haylett called 911 emergency service and advised the 911 operator that an unidentified man with a gun had just stopped the vehicle where she was a passenger. Mr. Eastman and Ms. Haylett's account of Investigator Sutton's display of his firearm is corroborated by the surveillance video, the 911 audio recording of Ms. Haylett's call to 911 emergency service and Mr. Louis' account of what happened at that time.

NYPD personnel did arrive at Essex Street and Linden Boulevard in response to Investigator Sutton's request for assistance and Ms. Haylett's 911 call. (*see exhibit 14*) Upon

DEF 16

arrival at the location, NYPD Sergeant Manuel Rossello spoke with Investigator Sutton and Mr. Eastman. (*see exhibit 7*) At the scene Mr. Eastman gave Sergeant Rossello permission to search his vehicle. (*see exhibit 7, 14*) NYPD personnel did not recover any firearms or other contraband from the white Honda Accord. After several hours at the scene, the NYPD personnel did not place Mr. Eastman or Ms. Haylett under arrest. (*see exhibit 5, 6, 9, 7, 14*)

## INVESTIGATIVE FINDINGS

The evidence collected during this investigation established that Investigator Sutton did display his firearm toward Mr. Eastman on June 26, 2014 on Essex Street, Brooklyn, NY. Investigator Sutton's explanation of the circumstances that required him to display his firearm toward Mr. Eastman is not corroborated by the other evidence in this matter. Rather, a review of the other witness interviews, 911 audio recordings and the Hotel Bliss surveillance video all contradict Investigator Sutton's written statements and his testimony at the MEO 16 interview. Consequently, this investigation has determined that Investigator Sutton's account of the facts regarding the display of his firearm is not credible.

The objective evidence of the Hotel Bliss surveillance video and the 911 audio recordings established a sequence of events leading to Investigator Sutton's display of his firearm. In his first 911 call, Investigator Sutton identified himself to the 911 operator as peace officer and described his pursuit of Mr. Eastman's white Honda Accord. Investigator Sutton requested police assistance for what he described as a reckless driver that may have a weapon. Investigator Sutton never stated to the 911 operator that he saw a firearm or any other weapon. In addition, Investigator Sutton never claimed to the 911 operator that he was ever threatened by the driver of the other vehicle. Nevertheless, Investigator Sutton continued to follow Mr. Eastman's white Honda Accord and provided the 911 operator a turn-by-turn description of the white Honda Accord's direction of travel.

In Investigator Sutton's second 911 call he stated to the 911 operator that he did not see Mr. Eastman with a weapon when he initially called to request assistance. Again, Investigator Sutton did not state to the 911 operator that he was threatened by Mr. Eastman at any time. In fact, Investigator Sutton directed the 911 operator to end the "10-13" (officer in need of assistance) notation because he had Mr. Eastman's car stopped and had everything under control. Investigator Sutton's words during the second 911 call are inconsistent with an individual who believed that he was just been threatened repeatedly by a man with a gun.

The Hotel Bliss surveillance video showed that Investigator Sutton approached Mr. Eastman's vehicle. The white Honda Accord obstructed the surveillance camera view of Investigator Sutton's hands. Consequently, the surveillance video does not show Investigator Sutton holding a firearm at the driver side window of the white Honda Accord. Investigator Sutton is observed on video speaking to the driver and then taking something from the driver of the white Honda Accord. The video captured Investigator Sutton walking away from the white Honda Accord and he appeared to re-holster his firearm on the right side of his body. The surveillance video then depicts Investigator Sutton speaking to someone on his cellular telephone as he stood by his vehicle's driver side. Mr. Eastman stepped out of the white Honda Accord and approached Investigator Sutton's vehicle. Investigator Sutton appeared to speak to Mr. Eastman. Thereafter, Mr. Eastman returned to the white Honda Accord.

The witness statements from Mr. Eastman, Ms. Haylett, Mr. Louis and of Investigator Sutton himself consistently describe that Investigator Sutton exited his vehicle with a gun and pointed his gun at the driver's side window of the white Honda Accord. The witnesses all agree that Investigator Sutton demanded Mr. Eastman produce a driver's license and vehicle registration with a gun pointed towards Mr. Eastman. The witnesses also consistently explained that after Investigator Sutton received the license from Mr. Eastman he returned to the gray Mercedes and began to speak to someone on a cellular telephone. The Hotel Bliss surveillance video and second 911 call made by Investigator Sutton corroborated the eyewitnesses' factual accounts. Investigator Sutton's actions are inconsistent with his claim of "self defense" because Investigator Sutton never removed Mr. Eastman and Ms. Haylett from the white Honda Accord to ensure they did not have weapons. In addition, Investigator Sutton turned his back and walked away from Mr. Eastman's white Honda Accord which are also actions inconsistent with Investigator Sutton's claim that he feared that Mr. Eastman posed an immediate threat to him.

It is important to note that in connection with Investigator Sutton's official duties he was appointed a Special Patrolman in accordance with the Rules of the City of New York (RCNY) Title 38, Chapter 13, Section 13-1. (*see exhibit 3*) As a Special Patrolman, Investigator Sutton is appointed in connection with the special duties of his employment, and such designation confers limited Peace Officer powers upon Investigator Sutton pursuant to New York State Criminal Procedure Law §2.10(27). The exercise of these powers is limited to Investigator Sutton's geographical area of employment and only while he is actually on duty. At the time that Investigator Sutton displayed his firearm he was not on duty or performing a function of his employment with the Department of Correction. The vicinity of Essex Street and Linden Boulevard is not a geographical area of the Department. Thus, Investigator Sutton was not acting in his official capacity as a Special Patrolman when he displayed his firearm toward Mr. Eastman and Ms. Haylett on June 26, 2014.

This investigation determined that the circumstances surrounding Investigator Sutton's conduct on June 26, 2014 did not justify the use of his firearm to menace Mr. Eastman and Ms. Haylett. In addition, Investigator Sutton's conduct was not performed in accordance with his official status as a Special Patrolman in this city, nor is Investigator Sutton's conduct consistent with the Department of Correction policy regarding a staff member's use of a personal protection firearm. Consequently, Investigator Sutton's conduct is outside the scope of his duties as a Special Patrolman, position as a Department Investigator and the privileges bestowed upon him in accordance with his Firearm Carrying Permit.

The evidence in this investigation suggest that on June 26, 2014, Investigator Sutton was angry at Mr. Eastman for nearly colliding with his car. Thereafter, both Investigation Sutton and Mr. Eastman engaged in verbally abusive language. Investigator Sutton then escalated the confrontation with threats of deadly physical force. At the time that Investigator Sutton displayed his firearm the evidence does not support that Investigator Sutton was threatened by Mr. Eastman or Ms. Haylett, nor was Investigator Sutton attempting to protect another person from death or serious physical injury.

Based on these facts, Investigator Sutton did unlawfully use a loaded firearm on a public street of this City, menaced Mr. Eastman and Ms. Haylett with his firearm, violated Department Directive 4511R-A and the Rules and Regulation of the Department.

DEF 18

## INVESTIGATIVE RECOMMENDATION

Based on the above-mentioned facts, this investigation has determined that there is sufficient evidence to prove beyond a preponderance of the evidence that Investigator Sutton committed the following offenses:

Rules and Regulation:

§ 3.20.010: **Professional Demeanor** – Members of the Department shall present a professional demeanor and as an employee of the City of New York shall act in a dignified manner.

§ 3.20.030: **Dismissal of Offenses** – Members of the Department found guilty of any of the following offenses may be dismissed from the Department, or suffer such other punishment as the Commissioner may direct: (1) Violation of the rules and regulations or, (4) Conduct unbecoming an officer or employee, or (5) Making false Official statement

§ 3.20.300: **Conduct of a Nature to Bring Discredit Upon the Department** – Though not specifically mentioned in these rules and regulations, all behavior which threatens the good order and discipline and all conduct of a nature to bring discredit upon the Department shall be acted upon by the Department according to the nature and degree of the offense and punished at the discretion of the Commissioner.

§ 4.30.020: **Filing False Documents** – Members of the Department shall not make any false entries or notations or render any false reports concerning the business of the Department.

§ 5.10.050: **Unauthorized Use of a Weapon** – The unauthorized use of any weapon while on or off duty is prohibited.

Department Directive:

# 4511R-1: **Firearms Policy and Procedures, Section VIII, Use of Firearm:** Deadly physical force may be used only as a last resort. If there area any reasonable alternatives that can be employed short of using deadly physical force, those alternatives must be exhausted before deadly physical force is used.

Mayoral Executive Order 16: Every officer or employee of the City shall cooperate fully with the Commissioner and the Inspectors General. Interference with or obstruction of an investigation conducted by the Commissioner or an Inspector General shall constitute cause for removal from office or employment or other appropriate penalty.

Penal Law Section:

§ 120.14(1): **Menacing in the Second Degree** - A person is guilty of menacing in the second degree when: (1) he or she intentionally places or attempts to place another person in reasonable fear of physical injury, serious physical injury, or death by displaying a deadly weapon, dangerous instrument or what appears to be a pistol, revolver, rifle, shotgun, machine gun or other firearm.

DEF 19

§ 240.26(1): **Harassment in the Second Degree** – A person is guilty of harassment in the second degree when, with the intent to harass, annoy or alarm another person: (1) he or she strikes, shoves, kicks or other subjects such other person to physical contact, or attempt or threaten to do the same.

§ 240.50(3): **Falsely Reporting an incident in the Third Degree** – A person is guilty of falsely reporting an incident in the third degree when, knowing the information reported, conveyed or circulated to be false or baseless, he: (3) gratuitously reports to a law enforcement officer or agency (a) the alleged occurrence of an offense or incident which did not in fact occur; or (b) an allegedly impending occurrence of an offense or incident which in fact is not about to occur; or (d) false information relating to an actual offense or incident or to the alleged implication of some person therein.

§265.01(2): **Criminal Possession of a Weapon in the Fourth Degree** - A person is guilty of criminal possession of a weapon in the fourth degree when: (2) he possesses any dagger, dangerous knife, dirk, razor, stiletto, imitation pistol, or any other dangerous or deadly instrument or weapon with the intent to use the same unlawfully against another.

§ 265.03(b): **Criminal Possession of a Weapon in the Second Degree** – A person is guilty of criminal possession of a weapon in the second degree when: (1) with intent to use the same unlawfully against another, such person: (b) possesses a loaded firearm.

Respectfully submitted,

Chimere Spaulding
Investigator

Jose L. Nieves
Agency Attorney