UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
YOLMA HAYLETT and KENNETH
EASTMOND,

      Plaintiffs,

   -against-         15 CV 223 (WFK) (PK)

CITY OF NEW YORK, et al.,

      Defendants.
-------------------------------------------------------x

# MEMORANDUM OF LAW IN OPPOSITION TO
# DEFENDANT CITY'S MOTION FOR SUMMARY JUDGMENT

HARVIS & FETT LLP
305 Broadway, 14th Floor
New York, New York 10007

*Attorneys for plaintiffs*

March 10, 2017

# TABLE OF CONTENTS

                                                                                    Page

PRELIMINARY STATEMENT ............................................................................... 1

THE SUMMARY JUDGMENT STANDARD ....................................................... 3

ARGUMENT .............................................................................................................. 4

    I. WHETHER SUTTON ACTED WITHIN THE SCOPE IS A JURY QUESTION AND AMPLE EVIDENCE EXISTS ......................................... 4

    II. PLAINTIFFS' NEGLIGENCE CLAIMS ALSO RAISE TRIABLE ISSUES ................................................................................................................ 8

CONCLUSION ........................................................................................................... 9

## PRELIMINARY STATEMENT

On the afternoon of June 26, 2014, plaintiffs were traveling in an automobile on the roadways of Brooklyn. Complaint, ¶ 14. Kenneth Eastmond, who was driving, steered plaintiffs' vehicle around a Mercedes being operated by defendant Bruce Sutton, an off-duty correction officer carrying his department-issued sidearm and badge. *Id.* at ¶¶ 15-16. Defendant Sutton, appearing to suffer from "road rage," pursued plaintiffs' vehicle while brandishing his gun, cursing and gesturing obscenely. *Id.* at ¶¶ 16-19. As he followed plaintiffs' vehicle, Sutton called 911 and identified himself as a peace officer in pursuit of a "perp" with a weapon who was driving recklessly. Dispatchers issued a "10-13," the NYPD code for officer in distress. *See* Memorandum dated June 26, 2014, annexed to the Declaration of Gabriel P. Harvis dated March 10, 2017 ("Harvis Decl.") as Exhibit 1.

Sutton pulled plaintiffs over near Linden Boulevard and Essex Street and conducted a "felony traffic stop" – identifying himself as an officer, Sutton displayed his shield and pointed his firearm directly at plaintiffs as he demanded Mr. Eastmond's license and registration. Plaintiffs' 56.1 Counterstatement dated March 10, 2017 ("Pls. 56.1"), ¶ 13. Plaintiffs were extremely frightened, and Mr. Eastmond handed over his paperwork under the reasonable belief that he was dealing with a police officer. *Id.* at ¶ 10. A frightful exchange ensued in which Sutton repeatedly

threatened and cursed at plaintiffs as they remained at gunpoint. *Id.*

NYPD units then arrived, along with an investigator from the Department of Correction, and plaintiffs were held in custody against their will for at least two and a half hours. *Id.* at ¶ 18. The investigators on the scene consulted with the NYPD's Legal Bureau and concluded that "Officer Sutton *did act within the scope of his employment* based on the belief that Mr. Eastmond had a firearm." *Id.* at ¶ 25.

Video evidence and eyewitness statements led investigators to subsequently credit plaintiffs' account and ultimately conclude "beyond a preponderance" that defendant Sutton had violated various departmental guidelines as well as New York Penal Law §§ 120.14(1) (Menacing in the Second Degree), 240.26(1) (Harassment in the Second Degree), 240.53(3) (Falsely Reporting an Incident in the Third Degree), 265.01(2) (Criminal Possession of a Weapon in the Fourth Degree) and 265.03(b) (Criminal Possession of a Weapon in the Second Degree). *See* Spaulding Report, annexed to Harvis Decl. as Exhibit 3.

In the instant litigation, the City of New York has declined to represent Sutton. Sutton has failed to defend the action or to appear for his deposition despite a subpoena, and has been held in default. *See* DE #42. Neither plaintiffs nor defendant Sutton have been deposed.

On this incomplete and unfavorable record, the City of New York now asks

2

this Court to find as a matter of law that Sutton acted outside the scope of his employment. The City's application should be denied.

## THE SUMMARY JUDGMENT STANDARD

It is well settled that summary judgment under FED. R. CIV. P. 56(c) is proper only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). A fact is "material" within the meaning of FED. R. CIV. P. 56 when its resolution "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The Court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Amnesty Am. v. Town of W. Hartford,* 361 F.3d 113, 122 (2d Cir. 2004) (quotation omitted).

The moving party carries the burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, "the nonmoving party must come forward with

3

'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986) (quoting FED. R. CIV. P. 56(e)). "[I]f 'there is any evidence in the record from any source from which a reasonable inference in the [nonmoving party's] favor may be drawn, the moving party simply cannot obtain a summary judgment.'" *Binder & Binder PC v. Barnhart,* 481 F.3d 141, 148 (2d Cir. 2007) (quoting *R.B. Ventures, Ltd. v. Shane,* 112 F.3d 54, 59 (2d Cir. 1997)) (alteration in original).

## ARGUMENT

### POINT I

### WHETHER SUTTON ACTED WITHIN THE SCOPE IS A JURY QUESTION AND AMPLE EVIDENCE EXISTS

As the Hon. Sterling Johnson recently explained in denying the City of New York's motion to dismiss *respondeat superior* claims against a police officer also arising out of an off-duty traffic dispute:

> There is no bright line test for distinguishing personal pursuits from activities taken under color of law. The relevant question in deciding whether an officer was acting under color of law is not whether the officer was on or off duty when the challenged incident occurred, but whether the officer albeit off-duty, nonetheless invokes the real or apparent power of the police department or performs duties prescribed generally for police officers.

4

*Abdelaziz v. City of New York*, 13 CV 7268 (SJ) (VMS), 2016 WL 1465355, *2 (E.D.N.Y. Apr. 14, 2016) (quotation marks, brackets and citations omitted). Further, "[s]ince the determination of whether an employee's actions fall within the scope of employment depends heavily on the facts and circumstances of the particular case, the question is ordinarily for the jury." *Beachamp v. City of New York*, 3 A.D.3d 465, 466 (2d Dept. 2004).

Off-duty officers involved in private disputes "will be considered to be acting under color of law if the officer responded by invoking his or her authority." *Claudio v. Sawyer*, 675 F.Supp.2d 403, 408 (S.D.N.Y. 2009); *see also Rivera v. La Porte*, 896 F.2d 691, 696 (2d Cir. 1990) ("Though the dispute that precipitated the arrest was private, the response, including the arrest and the use of excessive force, was unquestionably action under color of law.").

Indeed, in a strikingly similar matter, the New York Appellate Division upheld a trial jury's determination that an off-duty New York City Police Officer was acting within the scope of his employment as a police officer when he was involved in a traffic dispute that turned violent. *Graham v. City of New York*, 2 A.D.3d 678, 679 (2d Dept. 2003). After initially noting that scope of employment determinations are "heavily dependent on factual considerations...ordinarily...for the trier of fact," the appellate court upheld a trial jury's determination that an off-duty NYPD officer was

acting within the scope of his employment during a traffic dispute when he assaulted the other driver, arrested him, asked a bystander to call 911 and detained the passenger for 30 minutes until other officers arrived on the scene. *Id.*

Here, the record presents myriad disputes of fact concerning the parties' respective conduct and whether defendant Sutton was acting, as he steadfastly claims, as an officer of the law apprehending a criminal suspect. A reasonable jury could conclude that Sutton repeatedly invoked the authority of the government in speaking to 911 operators and pursuing, pulling over and detaining the plaintiffs using his gun and badge. *See* Pls. 56.1 at ¶¶ 6, 10, 13. Again, such was the conclusion of the City's own investigators in June 2014. *See* Exhibit 1 (finding Sutton to have been acting "within the scope of his employment" as a correction officer). Summary judgment is simply unavailable under such circumstances.

As this Honorable Court noted at the conference held on May 20, 2016:

> The City gives the man a gun, the City gives the man a badge, he has interaction with a citizen. Presumably, if he saw a guy robbing a jewelry store and pulled out his badge and his gun and arrested him and turned him over to City cops h'e'd be a hero…

Transcript of May 20, 2016 Proceedings, Harvis Decl., Exhibit 2, p. 14, ln. 11-24.

The decisions cited by the City of New York at p. 5 of its brief are inapposite as they involve developed, settled records, often after trial, where, unlike here,

6

undisputed facts reflect the absence of actual or apparent governmental authority in the challenged conduct. *See Abdelaziz*, 2016 WL 1465355 at *2 ("The City relies on cases that decide the color of law question in favor of the City at the summary judgment stage or later, which is telling.") (distinguishing cases cited in the City's Memorandum of Law at p. 5). Here, a jury is needed to decide the factual issues that will determine whether Sutton acted as a law enforcement officer that day.

The City's motion papers in this case appear to be derived, largely without alteration, from a case involving an alleged off-duty sexual assault by a police officer – a fact pattern starkly different from that presented here. *See* Defendants' Memorandum at p. 4 ("Plaintiff has failed to allege plausibly that defendant is liable under a theory of *respondeat superior* for the alleged sexual assault and battery by the defendant officers.") and p. 1 (repeatedly referencing "Police Officer Carlos Becker").

The cut-and-paste preparation aside, the authority cited by the City derives from the wholly distinct line of cases involving on-duty sexual assaults, which New York courts have held are never in the furtherance of the master's business, and therefore must be motivated solely by personal animus. *See, e.g., Fernandez v. DeLeno*, 71 F. Supp. 2d 224, 231 (S.D.N.Y. 1999) (finding no *respondeat superior* liability for city as a result of police officers' alleged sodomy and rape of plaintiff). Such cases lack any application to the facts presented here.

7

# POINT II

## PLAINTIFFS' NEGLIGENCE CLAIMS ALSO RAISE TRIABLE ISSUES

With regard to plaintiffs' negligent retention, supervision and entrustment claims, the City misstates the law in its argument at pp. 7-8 of its brief.

Given that the City has taken the affirmative position in its motion that Sutton was acting outside of the scope of his employment, plaintiffs' claims of municipal negligence – permissibly pled in the alternative – survive as a matter of law. *See, e.g., Saleh v. Savage*, No. 12 CV 0468S (WMS), 2015 WL 1608839, *8 (W.D.N.Y. Apr. 10, 2015) ("[C]laims for negligent hiring, training, and supervision are based on an employer's direct liability, and are subject to dismissal only where duplicative of an asserted vicarious liability claim.") (citations omitted); *Selmani v. City of New York*, 116 A.D.3d 943, 944, 984 N.Y.S.2d 114, 116 (2014) ("In instances where vicarious liability for an employee's torts cannot be imposed upon an employer, a direct cause of action against the employer for its own conduct, be it negligent hiring, supervision, or other negligence, may still be maintained.") (collecting cases).

The City's position that plaintiffs have adduced insufficient evidence of negligent employment and entrustment to raise triable issues is belied by this very incident, which alone would be sufficient to allow a reasonable juror to conclude that

municipal negligence was a contributing factor. *See Id.* Accordingly, the City's motion should be denied.

## CONCLUSION

For the foregoing reasons, plaintiffs respectfully request that the Court deny the City's motion in its entirety, and grant such other and further relief as the Court deems just and proper.

Dated: New York, New York
March 10, 2017

                              HARVIS & FETT LLP

                              _____
                              Gabriel P. Harvis
                              305 Broadway, 14th Floor
                              New York, New York 10007
                              (212) 323-6880
                              gharvis@civilrights.nyc

                              *Attorneys for plaintiffs*