UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

YOLMA HAYLETT and KENNETH EASTMOND,

          Plaintiffs,

   -against-

THE CITY OF NEW YORK and BRUCE SUTTON,

          Defendants.

---

No. 15-CV-0223 (WFK) (PK)

 

**MEMORANDUM OF LAW IN SUPPORT OF
<u>THE CITY OF NEW YORK'S MOTION FOR RECONSIDERATION</u>**

 

**ZACHARY W. CARTER**
CORPORATION COUNSEL OF THE CITY OF NEW YORK
*Attorney for Defendant City of New York*
100 Church Street
New York, New York 10007

  By: Tobias E. Zimmerman
     *Senior Counsel*
     Special Federal Litigation Division
     (212) 356-2661

Dated January 2, 2018

## **TABLE OF CONTENTS**

**Page**

**TABLE OF AUTHORITIES** ................................................................................................... ii

**PRELIMINARY STATEMENT** ...............................................................................................1

**LEGAL STANDARD** ................................................................................................................2

**ARGUMENT** ..............................................................................................................................2

    **POINT I:**

        SUTTON WAS NOT A "PEACE OFFICER" UNDER
        NEW YORK LAW……………………………………………………………………3

    **POINT II:**

        THE "AGENCY REPORT" THAT THE COURT
        RELIED ON WAS BASED ON MISTAKEN
        INFORMATION AND WAS INADMISSIBLE
        HEARSAY THAT SHOULD NOT HAVE BEEN
        CONSIDERED ON SUMMARY JUDGMENT ……………………………………6

**CONCLUSION** ..........................................................................................................................9

## **TABLE OF AUTHORITIES**

**Page(s)**

**Federal Cases**

*City of New York v. Amerada Hess Corp. (In Re: Methyl Tertiary Butyl Ether),*
   No. 04 Civ. 3417 (SAS)
   2007 U.S. Dist. LEXIS 74724 (S.D.N.Y.) ................................................................................. 2

*Estate of Hamilton v. City of New York*
   627 F.3d 50 (2d Cir. 2010) ....................................................................................................... 7

*Maloney v. County of Nassau*, No. 03-CV-4178 (SLT) (MLO)
   2009 U.S. Dist. LEXIS 27502 (E.D.N.Y.) ............................................................................... 2

*Shrader v. CSX Transp., Inc.*
   70 F.3d 255 (2d Cir. 1995) ....................................................................................................... 2

**State Cases**

*Beauchamp v. City of New York*
   771 N.Y.S.2d 129 (2d Dep't 2004) .......................................................................................... 4

*Graham v. City of New York*
   770 N.Y.S.2d 678 (2d Dep't 2003) .......................................................................................... 5

*People v. Holloway*
   691 N.Y.S.2d 583 (3d Dep't 1999) .......................................................................................... 3

*Quinlan v. City of New York*
   305 N.Y.S.2d 4 (3d Dep't 1969) .............................................................................................. 4

**Statutes**

42 U.S.C. § 1983 ............................................................................................................................ 5

New York Criminal Procedure Law § 2.10 ............................................................................... 3, 4

New York Criminal Procedure Law § 140.10 ............................................................................... 5

New York Criminal Procedure Law § 140.25 ............................................................................ 3, 5

New York Criminal Procedure Law § 140.30 ............................................................................... 3

## **TABLE OF AUTHORITIES**
**(cont.)**

**Page(s)**

**Local Laws & Regulations**

38 Rules of the City of New York § 13-1 ................................................................................3, 4

New York City Administrative Code § 14-106 .......................................................................3, 4


**Rules**

Fed. R. Civ. P. 56(c)(2) ..................................................................................................................7

Fed. R. Evid. 106 ...........................................................................................................................8

Local Civil Rule 6.3 .......................................................................................................................2

**MEMORANDUM OF LAW IN SUPPORT OF**
**THE CITY OF NEW YORK'S MOTION FOR RECONSIDERATION**

Defendant City of New York, by its attorney, Zachary W. Carter, Corporation Counsel of the City of New York, respectfully submits this Memorandum of Law in support of its motion for reconsideration of the Court's Decision & Order, dated December 18, 2017 (docket no. 55) ("D&O") denying the City's Motion for Summary Judgment.

**PRELIMINARY STATEMENT**

The Court's Decision & Order concluded that the City might be liable under *respondeat superior* because "[a] reasonable jury could easily conclude [that former Department of Correction Investigator Bruce Sutton's] actions were taken to further the City's interest or to carry out law enforcement duties incumbent upon Sutton."  D&O at 3.[1]  The Court's decision cites evidence that Sutton "identif[ied] himself as a peace officer" and that "one of [the City's] agencies concluded that Sutton was acting within the scope of his employment." *Id.* at 4.  The City asks the Court to reconsider that decision because (1) at the time of the incident, Sutton was not a "peace officer" under state law, and therefore could not have had any "law enforcement duties incumbent upon [him]"; and (2) the agency 'conclusion' that the Court relied on was not only from the wrong agency (NYPD) and based on misinformation, it was also inadmissible hearsay.  If the Court is inclined to accept the conclusion of a City agency on the legal question at issue, it should look instead to the agency that Sutton actually worked for—the Department of Correction—which unequivocally concluded that he was *not* acting within the scope of his employment.  Plaintiffs deliberately withheld that investigative finding from the Court by selectively attaching only certain pages from the report that contains it.[2]

---

[1] The Office of Corporation Counsel does not represent Sutton in this action.
[2] As explained in Point II below, a full copy of that report is attached as Exhibit A.

## LEGAL STANDARD

The Court may grant a motion for reconsideration where there are "matters or controlling decisions which counsel believes the Court has overlooked." Local Civil Rule 6.3. *See also Maloney v. County of Nassau*, No. 03-CV-4178 (SLT) (MLO), 2009 U.S. Dist. LEXIS 27502, at *17–18 (E.D.N.Y.) (citing *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995) (collecting cases)); *City of New York v. Amerada Hess Corp. (In Re: Methyl Tertiary Butyl Ether),* No. 04 Civ. 3417 (SAS), 2007 U.S. Dist. LEXIS 74724, at *4–5 (S.D.N.Y.). The City contends that reconsideration is warranted in this instance because the Court's reliance on Sutton's status as a "peace officer" is directly contrary to the relevant New York statute, and because one agency's incorrect conclusion that Sutton was acting within the scope of his employment by a different agency was not proper grounds for denial of summary judgment.

## ARGUMENT

In their opposition brief, Plaintiffs referred to Sutton as an "off-duty correction officer carrying his department issued sidearm and badge." Plaintiffs' Opposition Br. (docket no. 48) ("Pls.' Br."), at 1 (improperly citing their own Complaint as "evidence").[3] But Sutton was *not* a Correction Officer. As Plaintiffs admit, Sutton was employed by the New York City Department of Correction as an "Associate Investigator". Pls.' 56.1 (docket no. 50) at ¶ 4. This distinction is critical because, among DOC employees, only Correction Officers are granted the full powers of a "peace officer" under New York state law. Furthermore the "agency report" that the Court considered at Plaintiffs' behest was based on the same misunderstanding of Sutton's position with DOC. The relevant report by DOC reached exactly the opposite conclusion following a full investigation.

---

[3] Sutton's personal protection firearm was not "issued" by DOC.

# POINT I
## SUTTON WAS NOT A "PEACE OFFICER" UNDER NEW YORK LAW

The Court assumed that Sutton was a peace officer, and therefore had "law enforcement duties incumbent upon [him]" even though he was off duty. D&O at 3. While that assumption would have been valid if Sutton was employed by DOC as a Correction Officer, his actual civil service title was "Associate Investigator", a position that did not convey any peace officer powers.

New York's Criminal Procedure Law defines a number of categories of persons who are considered "peace officers". *See generally* N.Y. C.P.L. § 2.10. Peace officers are authorized to make warrantless arrests in situations where an ordinary citizen cannot. *Compare* N.Y. C.P.L. § 140.25 *with* N.Y. C.P.L. § 140.30. Among the people defined as peace officers under state law are "correction officers of any state correctional facility or of any penal correctional institution." N.Y. C.P.L. § 2.10(25). *See also People v. Holloway*, 691 N.Y.S.2d 583, 584 (3d Dep't 1999) ("penal correctional institution" referred to in N.Y. C.P.L. § 2.10(25) includes local jails). However, Sutton's civil service position as an Associate Investigator for DOC does not fall within any of the categories of "peace officer" under state law. *See generally* N.Y. C.P.L. § 2.10. Although Sutton was authorized to use peace officer powers in connection with his employment, the authority to do so derived from his parallel appointment as a "Special Patrolman" under the rules and regulations of the City of New York. *See generally* N.Y.C. Admin. Code § 14-106(e) *and* 38 R.C.N.Y. § 13-1.[4] Unlike Correction Officers, "Special Patrolmen are appointed in connection with special duties of employment, and such designation confers *limited* Peace Officer powers upon the employee pursuant to New York State Criminal Procedure Law

---

[4] Copies of these two provisions of local law are attached for the Court's convenience.

§ 2.10(27)." 38 R.C.N.Y. § 13-1(c) (emphasis added). Under the state law, Sutton could only exercise peace officer powers "when [he was] acting pursuant to [his] special duties." N.Y. C.P.L. § 2.10(27); *see also* N.Y.C. Admin. Code § 14-106(e) (Special Patrolmen employed by an agency "possess all the powers and discharge all the duties of a peace officer while in the performance of their official duties."). Sutton's "special duties" were those "of [his] employment", 38 R.C.N.Y. § 13-1(c), and his exercise of peace officer powers was expressly limited to his "geographical area of employment and only while actually on duty." 38 R.C.N.Y. § 13-1(c). His official duties with DOC only required him to investigate other DOC employees for malfeasance related to their employment; he was neither authorized nor expected to enforce the Vehicle & Traffic Law, or investigate private citizens for suspected crimes.

The incident at issue in this case happened while Sutton was on his was way home from his niece's graduation. Sutton was driving his personal automobile when he encountered Plaintiffs on Linden Boulevard in Brooklyn. He was off duty that entire day—he had not worked and was not on his way to work. Because Sutton was off duty, outside of the geographical area of the DOC, and not acting in furtherance of his duties as a DOC employee, he could not have acted as a peace officer under New York law.

Courts have held that the authority granted to peace officers, including Correction Officers, may carry with it a duty to enforce the law, even while off duty. *E.g.*, *Quinlan v. City of New York*, 305 N.Y.S.2d 4, 5 (3d Dep't 1969). This Court appears to have reached the same conclusion when it found that there were "law enforcement duties incumbent upon Sutton" even though he was off duty. D&O at 3. But both of the cases cited by the Court concerned the duties incumbent on off-duty *police* officers, who wield general, unrestricted powers similar to those of a peace officer. *See Beauchamp v. City of New York*, 771 N.Y.S.2d 129 (2d Dep't 2004) (off-duty

housing (NYCHA) police officers); *Graham v. City of New York*, 770 N.Y.S.2d 678 (2d Dep't 2003) (off-duty NYPD officer)); *and compare, e.g.*, N.Y. C.P.L. § 140.10 *with* N.Y. C.P.L. § 140.25 (authorizing warrantless arrests by police officers and peace officers). Because Sutton was neither a peace officer nor a police officer at the time of the incident, he wielded no powers beyond those of the "ordinary citizen", and could not have had any "law enforcement duties incumbent upon [him]" at the time.

Plaintiffs cited numerous portions of Sutton's self-serving statement to convince the Court that there exists an issue of fact as to whether Sutton was acting "within the scope of his employment while investigating what he perceived to be reckless driving and/or criminal possession of a weapon." D&O at 3–4 (citing Pls.' 56.1 at ¶ 6, 8, 10, & 13). But Sutton's own beliefs about his status as a peace officer are irrelevant. Even if Sutton truly believed that he was a full "peace officer" empowered to enforce the law while off duty, that mistaken belief could not negate what the law actually says. And the relevant statutes and regulations are clear: While off duty, Sutton was not a peace officer, and he enjoyed only the legal authority of an ordinary citizen. Thus, whether or not Sutton perceived himself to be an off-duty "peace officer" engaged in law enforcement, there can be no dispute that he was not authorized to do so under state law. , and that such activities were therefore beyond the scope of anything his employer expected of him.[5]

---

[5] Plaintiffs cite numerous cases addressing "color of law" for purposes of a federal claim under Section 1983 as support for their contention that Sutton was acting within the "scope of his employment" for purposes of *respondeat superior* on a state-law claim. As discussed in the City's Reply, the two concepts are not legally synonymous. *See* City's Reply (docket no. 51) at 3–4. The distinction is particularly important in this instance. Sutton might have acted "under color of law" when he misused the limited peace officer powers granted to him under state law. But he could not have been acting "within the scope of his employment" when he exceeded the explicit bounds of the authority granted to him by his employer.

Sutton was not employed by DOC as a Correction Officer, and his appointment as a Special Patrolman conveyed only *limited* peace officer powers under state law—powers that were restricted to his on-duty responsibilities as an Associate Investigator for DOC.  Sutton was neither authorized nor expected to engage in any law enforcement activities while off duty, and he therefore could not have been acting within the scope of his employment when he stopped and detained the Plaintiffs.

### POINT II

### THE "AGENCY REPORT" THAT THE COURT RELIED ON WAS BASED ON MISTAKEN INFORMATION AND WAS INADMISSIBLE HEARSAY THAT SHOULD NOT HAVE BEEN CONSIDERED ON SUMMARY JUDGMENT

The Court noted in its Decision & Order that the "City concedes that an investigation conducted by one of its own agencies concluded that Sutton was acting within the scope of his employment." D&O at 4 (citing City's Reply at 5 n.1).  Unfortunately, the Court appears to have misconstrued the City's footnote, and also accepted without question a "report" that was not only demonstrably wrong, but was also largely inadmissible hearsay that should not have been considered on summary judgment.

First, the "agency" that generated the report referred to by the Court is the Police Department, and the "report" in question is a two-page memorandum from the Patrol Supervisor of the 75th Precinct (an NYPD Sergeant) to the Chief of NYPD's Internal Affairs Bureau.  *See* Pls.' Ex. 1 (docket no 49-1).  That document provides a brief summary of the underlying incident from the perspective of the police officers who responded to the scene, and relies exclusively on Sutton's description of what happened before NYPD arrived.  *See id.* at ¶¶ 2–3.  Significantly, Sutton is incorrectly referred to as a "Correction Officer" throughout the document, and the key sentence reports that the patrol sergeant "conferred with Mr. Mendelson of [NYPD] Legal Bureau and it was determined that *Corrections Officer* [sic] Sutton did act within the scope of his

employment. . . ." *Id.* at ¶ 3. But, as discussed above, Sutton was *not* a Correction Officer, and any 'legal conclusion' based on the premise that he was must be rejected.[6]

Second, even if the "report" was well founded, it was inadmissible hearsay and therefore should not have been considered at all on summary judgment. *See* Fed. R. Civ. P. 56(c)(2); *Estate of Hamilton v. City of New York*, 627 F.3d 50, 54 (2d Cir. 2010). Plaintiffs have not sought to depose the patrol sergeant who authored the report, or the police officers named in paragraph 2; nor have they sought discovery from "Mr. Mendelson of Legal Bureau" who reportedly "determined that Corrections Officer Sutton did act within the scope of his employment. . . ." Even if the report itself was not inadmissible hearsay from the sergeant who wrote it, the statements reporting what he learned from other people certainly would be, and his report on those matters—including the legal "determin[ation]" allegedly made by "Mr. Mendelson"—cannot be considered for their truth.

The Court read footnote 1 of the City's Reply brief as a concession that an "investigation" by a City agency "concluded that Sutton was acting within the scope of his employment." But the City was really only trying to point out that Plaintiffs' reliance on the NYPD's incident report was misplaced, without getting bogged down in a discussion of why the Court should not consider a misinformed, third-hand legal conclusion as "evidence" weighing on the ultimate legal question before it. Towards that end, the City merely noted that the "determination" cited by Plaintiffs was "contradicted by another City agency", without further discussing the contradictory report.

---

[6] Even if Sutton had been a Correction Officer, that would not—in and of itself—have determined whether he was acting within the scope of his employment when he precipitated an entirely private dispute with the Plaintiffs concerning matters wholly unrelated to his duties.

Nevertheless, if the Court is inclined to consider agency findings, then it should consider the report from DOC—the agency that Sutton actually worked for—following a complete investigation of the incident, and should give little or no weight to the incident report drafted by NYPD based entirely on Sutton's one-sided description of events. And what the DOC report says is that—for the same reasons discussed above in Point I—"Investigator Sutton's conduct [was] outside the scope of his duties as a Special Patrolman, position as a Department Investigator and the privileges bestowed upon him in accordance with his Firearm Carrying Permit." Exhibit A hereto, at p.7.

The Plaintiffs relied on a portion of the same report in their opposition brief. *See* Pls.' Br. at 2 (citing the "Spaulding Report, annexed to Harvis Decl. as Exhibit 3" (docket no. 49-3)). However, they carefully selected only two pages from that nine-page report, and neglected to put the remainder before the Court. *See* Pls.' Ex. 3 (including only pages 8 and 9 of 9). But the Court's consideration of that document should not be limited by Plaintiffs' selective inclusion of only the pages they consider favorable to themselves. *See* Fed. R. Evid. 106. The City has therefore attached the complete report as Exhibit "A" hereto.

Thus, if the Court is to consider the findings of the City's agencies as evidence bearing on the ultimate legal question at issue, it should look at the complete report of DOC's formal investigation, rather than NYPD's misinformed incident report from the day of the incident. And what the DOC report shows is that the agency that employed Sutton found that he was not acting within the scope of his employment when he engaged Plaintiffs in an entirely private dispute while off duty.

## CONCLUSION

For the foregoing reasons, Defendant City of New York respectfully requests that the Court reconsider its prior decision denying the City's Motion for Summary Judgment, and grant such other and further relief as it deems just and proper.

Dated: New York, New York
       January 2, 2018

**ZACHARY W. CARTER**
CORPORATION COUNSEL OF THE CITY OF NEW YORK
*Attorney for Defendant City of New York*
100 Church Street
New York, New York 10007
(212) 356-2661

By: _____
    Tobias E. Zimmerman
    *Senior Counsel*
    Special Federal Litigation Division

cc:    HARVIS & FETT, LLP
       Baree N. Fett, Esq. (**via ECF**)
       Gabriel P. Harvis, Esq. (**via ECF**)
       *Attorneys for Plaintiff*